# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re:
**Brian Powell and
Elyse Powell,**

           **Debtors.**

**Bankruptcy Case
No. 11-41147-JDP**

_____

**Bank of Idaho,**

           **Plaintiff,**
**vs.**

**Brian Powell,**

           **Defendant.**

**Adv. Proceeding No.
No. 11-8084**

_____

## MEMORANDUM of DECISION
_____

**Appearances:**

    Gregory Crockett, HOPKINS RODEN CROCKETT HANSEN &
HOOPES, PLLC, Idaho Falls, Idaho, Attorney for Plaintiff.

    Steven L. Wetzel, Idaho Falls, Idaho, Attorney for Plaintiff.

MEMORANDUM OF DECISION - 1

## *Introduction*

Plaintiff-creditor Bank of Idaho ("BOI") commenced this § 523

adversary proceeding against Defendant chapter 7[1] debtor Brian Powell

("Powell") after a company in which Powell was an officer, Now Disc, Inc.

("Now Disc"), breached a contract with BOI.  After a June 7, 2012, trial, the

Court took the matter under advisement.  Having considered the

stipulated facts, the evidence and testimony presented at trial, the parties'

briefs and arguments, and applicable law, this Memorandum sets forth the

Court's findings of fact and conclusions of law.  Rule 7052, 9014.

## *Facts*[2]

Powell was a shareholder in, and the president of, Now Disc, a

compact disc duplication and production company in Idaho Falls.  To

assist in its operations, Now Disc obtained a $350,507 line of credit from

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2]  Unless otherwise noted, these undisputed facts are derived from the Parties' Stipulation of Facts, Dkt. No. 26, the parties' briefs, and testimony and other evidence submitted at the trial.

MEMORANDUM OF DECISION - 2

BOI on February 22, 2007.[3]  Exh. 100.  Powell, individually, was a co-debtor

on the loan with Now Disc, and signed the loan documents[4] both as an

individual and as "President of Now Disc, Inc."  *Id.*

As security for repayment of the line of credit, Now Disc and Powell[5]

granted a security interest in BOI's "Inventory, Accounts and General

Intangibles . . . [and] all proceeds relating to any of the foregoing" (the

"Collateral").  Exh. 100, Commercial Security Agreement at 1.  In the loan

documents, Now Disc and Powell also represented that they would not

transfer the Collateral to anyone other than BOI, and would not encumber

the Collateral, or allow a third party to assert a security interest in it,

without BOI's prior written consent, even if the granted security interest

---

[3] While the Parties' Stipulated Facts and BOI's brief both provide that
"[t]he first transaction was entered into on *December* 22, 2007," (emphasis added),
the Court finds that, upon review of the record, the first loan transaction between
BOI and Now Disc/Powell was entered into on February 22, 2007.  Exh. 100.  The
precise date is not material to the Court's decision.

[4] Collectively, the loan documents included a promissory note,
commercial security agreement, and business loan agreement.  Exh. 100.

[5] It appears that BOI did not obtain any collateral from Powell as an
individual.  Though Powell also signed the loan documents in his individual
capacity, the pledged collateral only included interests in Now Disc's property.

MEMORANDUM OF DECISION - 3

were junior in priority to BOI's interest. *Id.* at 1–2. If, by chance, Now Disc

or Powell, for whatever reason, did dispose of the Collateral without BOI's

consent, they agreed to segregate the proceeds, hold them in trust, and

immediately deliver them to BOI. *Id.*

BOI filed a UCC-1 Financing Statement covering the Collateral with

the Idaho Secretary of State on February 22, 2007. Exh. 100. The only

"Debtor" indicated on that Financing Statement was "Now Disc, Inc." *Id.*

BOI renewed Now Disc's line of credit in both 2008 and 2009,[6] and

and Now Disc and Powell executed new loan documents each year.[7] *See*

Exh. 105, 107. In 2008, the documents were substantially similar to those

executed in 2007.[8] Exh. 105. Powell again signed the documents as Now

Disc's president and individually. *Id.*

---

[6] Prior to each annual renewal, BOI presumably assessed Now Disc's and
Powell's creditworthiness.

[7] BOI and Now Disc executed new loan documents on March 24, 2008,
Exh. 105, and June 25, 2009, Exh. 107.

[8] The 2008 renewal added "Chattel Paper" to the Collateral securing BOI's
interest in the loan. Exh. 105. BOI did not update its UCC-1 Filing Statement to
include the additional Collateral.

MEMORANDUM OF DECISION - 4

In 2009, a new co-debtor was added to the line of credit, Now Disc's secretary Derrick Gayle ("Gayle"). Exh. 107. While Powell signed the Commercial Security Agreement and Business Loan Agreement associated with the 2009 renewal, it appears he did not sign the Promissory Note for the renewal.[9] *Id.* Rather, Gayle signed the Promissory Note, in his capacity as Now Disc's secretary and individually. *Id.* Otherwise, for the purposes of this dispute, the loan documents' terms appear to have remained the same as those used in previous years.[10] *Id.* BOI did not amend the UCC-1 Financing Statement in 2009; Now Disc remained the only "Debtor" indicated on BOI's filed statement.

In early 2010, a company known as "The Receivables Exchange" ("TRE") offered its services to Now Disc. TRE proposed to act as an auctioneer/broker for the sale of Now Disc's accounts receivables. Under

---

[9] While the copy of the 2009 Promissory Note provided to the Court had a place for Powell to sign, those signature lines are blank. Exh. 107.

[10] While there were some changes in the format in which the loan and Collateral information was presented in the 2009 documents, the information was, essentially, the same.

MEMORANDUM OF DECISION - 5

this arrangement, TRE proposed to facilitate Now Disc's recovery of

approximately 96% to 98% on all accounts sold through TRE in exchange

for a 2% to 4% fee and a security interest in TRE's favor in the unsold

accounts. According to Powell, the agreement was that TRE's security

interest in the company's accounts would always be junior in priority to

BOI's interest in those accounts. Viewing TRE's proposed services as a

mechanism to more quickly obtain a return on Now Disc's accounts

receivables, while at the same time recognizing that BOI held a prior

security interest in those accounts, Powell took TRE's proposal to Now

Disc's board of directors for consideration. Per Powell, the Board

determined that, as long as Now Disc withheld sufficient amounts of

accounts receivables from TRE's auction process to cover the outstanding

balances Now Disc owed to BOI, the Board was comfortable entering into a

relationship with, and granting a junior priority security interest to, TRE.

    In February 2010, Now Disc[11] entered into an agreement to use TRE's

---

    [11] In spite of BOI's assertion in its pretrial memorandum that "[Powell]
personally signed a Certificate of Authority for TRE to sell accounts or otherwise
(continued...)

MEMORANDUM OF DECISION - 6

services.  Exh. 110.  TRE filed a UCC-1 Financing Statement with the Idaho

Secretary of State on March 15.  *Id.*  On that financing statement, instead of

providing a collateral description, TRE indicated "See Exhibit."  *Id.*  TRE

attached to the financing statement an "Exhibit to UCC Financing

Statement," which includes a collateral description indicating that TRE

claimed a security interest in,  among other things, "[a]ll of [Now Disc's]

Receivables (e.g., accounts and payment intangibles)" and "[a]ll proceeds"

of those receivables.  *Id.*  Beneath the collateral description, in bold type,

the exhibit also provided:

> **NOTICE: [Now Disc] has entered into various
> agreements with TRE under which, from time to
> time, one or more times, [Now Disc] will sell,
> transfer and assign 100% ownership interests in
> [Now Disc's] Traded Receivables and all rights
> to Collection Proceeds to qualifying Buyers.
> Following Consummation, the Buyer will be the
> sole owner of each Traded Receivable and the**

---

[11](...continued)
collect them on February 5, 2010," and that "[Powell] also granted a security
interest in the accounts receivable of Now Disc to TRE," Dkt. No. 24 at 7, the
parties to the agreement were clearly Now Disc and TRE, and Powell only signed
the documents in his representative capacity as Now Disc's president, not as an
individual, Exh. 110.

MEMORANDUM OF DECISION - 7

> **sole person entitled to the Collection Proceeds thereof.  ALL THIRD-PERSONS ARE PLACED ON NOTICE THAT NO THIRD-PARTY IS ENTITLED TO RECEIVE OR TO HAVE ANY RIGHTS IN SELLER'S TRADED RECEIVABLES AND IN THE COLLECTION PROCEEDS THEREOF TO THE DETRIMENT OF TRE AND BUYER.**

*Id.* (bold and caps in original).

In April 2010, TRE began offering Now Disc's accounts for auction.[12] Exh. 112.  Once a particular auction closed, any proceeds were wired to Now Disc's BOI bank account the next day.  Now Disc then used those proceeds to pay its business expenses, including materials, rent, and loan payments.  However, the proceeds were never delivered to BOI as proceeds of the sale of an account receivable, nor were they maintained in a segregated trust account for BOI.

As far as can be discerned from the evidentiary record, the amount of accounts Now Disc provided to TRE for auction never exceeded what would cover the amount of Now Disc's outstanding line of credit with BOI.

---

[12]  Through May 23, 2011, TRE auctioned Now Disc invoices having a face value of $1,636,718.56.  Exhs. 112, 113.

MEMORANDUM OF DECISION - 8

In other words, Now Disc always retained accounts that, at least on paper, were sufficient in amount to secure its obligations to BOI.[13]

Claiming to be oblivious to Now Disc's grant of a security interest to TRE, BOI extended the 2009 line of credit's maturity date twice, first through August 20, 2010, and, later, through October 20, 2010.  Exh. 107. At that time, BOI was unwilling to extend the line of credit further, and, instead, determined it should be converted to a term loan (the "Term Loan") requiring Now Disc to pay down the loan over twelve months.[14]

The day prior to executing the Term Loan documents, BOI's banker did a search the Idaho Secretary of State's UCC records to ensure that BOI

---

[13]  BOI rightly points out, and Powell readily admitted at trial, that the invoices Now Disc provided to TRE were usually those most readily collectable. Therefore, the reserves not assigned to TRE, *e.g.*, the accounts presumably intended by Now Disc to serve as BOI's collateral, were those less likely to be collectable.  Of course, Powell contends that this situation is not unlike what would have existed if Now Disc had not used TRE, but had instead collected on the easily-collectable accounts itself, again leaving the difficult-to-collect accounts as BOI's collateral.

[14]  The Term Loan was structured so that Now Disc would pay eleven monthly payments of approximately $6,894.22 each, with a balloon payment of approximately $294,384.60 in the twelfth month.  Exh. 108.  The outstanding balance on Now Disc's line of credit was satisfied by the Term Loan funding.

MEMORANDUM OF DECISION - 9

continued to hold a priority security interest in Now Disc's Collateral.  The

search results indicated that BOI retained its first-priority status, but,

notably, the search results also included a copy of TRE's financing

statement, with its exhibit.[15]  Despite its knowledge of TRE's competing

interest in the Collateral, BOI and Now Disc executed the Term Loan

documents on December 10, with both Powell and Gayle signing the loan's

Promissory Note on behalf of Now Disc as corporate officers, and as

individuals.  Exh. 108.  The Term Loan documents granted BOI a security

interest in collateral described as "[a]ll Inventory, Chattel Paper, Accounts

and General Intangibles," as well as in the proceeds of those items.  *Id.*  As

---

[15]  The stipulated facts entered by the parties provide:

> On December 9, 2010, BOI performed a UCC search.
> The Search Report (Defendant's Exhibit 202) disclosed
> TRE's UCC Financing Statement and attached exhibit.
> BOI employee Lewis Blurton reviewed the UCC
> Search Report prior to BOI executing the December
> 10, 2010[,] loan documents.

¶ 42, Dkt. No. 26.  At trial, however, Mr. Blurton testified that he was not aware
of TRE's UCC Financing Statement prior to December 10, 2010, because, in
conducting his December 9, UCC search, he looked only at the dates of the filed
statements, and not at the statements themselves.  The Court finds that, as of
December 9, 2010, BOI knew of TRE's security interest in the Collateral.

MEMORANDUM OF DECISION - 10

with the credit line documents, Now Disc, Powell, and Gayle agreed that

they would not sell, transfer, or encumber BOI's collateral; or, if they did,

that they would hold in trust, and immediately deliver to BOI, the

proceeds. *Id.* BOI amended its UCC-1 Financing Statement on December

10, to add Powell and Gayle as "Debtor[s]." Exh. 200.

While Now Disc made some of the required monthly payments

under the Term Loan, it stopped doing so in June 2011. Powell filed an

individual chapter 7 bankruptcy petition on July 12, 2011. Bankr. No. 11-

41147, Dkt. No. 1.

Beginning in August 2011, Now Disc turned its retained accounts

over to BOI, which BOI has attempted to collect.[16] Now Disc also

surrendered its inventory over to BOI in October 2011. The inventory has

not yet been liquidated.

BOI commenced this adversary proceeding against Powell on

October 5, 2011. Adv. No. 11-8084, Dkt. No. 1. BOI alleges that, based on

---

[16] BOI had recovered and applied to the Term Loan approximately
$46,000 on Now Disc's accounts as of the date of the trial on this adversary
proceeding.

MEMORANDUM OF DECISION - 11

the above facts, Powell willfully and maliciously injured BOI such that his

debt to BOI should be excepted from discharge under § 523(a)(6).  BOI

contends that Powell, while acting as Now Disc's president, actively

participated in the authorization of, and executed the agreement to enter, a

relationship with TRE, and that this conduct breached the contract with

BOI.  *See* BOI's Pretrial Memorandum at 14, Dkt. No 24 ("[Powell] was a

man of experience in business affairs, knew of the significance of the

security interest granted to BOI, and knew the fact that selling the collateral

would harm that interest since the proceeds from the sale of accounts were

not applied to the business line of credit which was integral to the

borrowing relationship.").

Powell disputes that his debt to BOI is nondischargable.  He asserts

that, in orchestrating Now Disc's dealings with TRE, he did not act with

the intent required to constitute a willful and malicious injury to BOI's

property for purposes of § 523(a)(6).  *See* Powell's Pretrial Memorandum,

Dkt. No. 23.

MEMORANDUM OF DECISION - 12

*Discussion and Disposition of the Issues*

**I.    Powell's conduct did not cause the type of injury to BOI contemplated by § 523(a)(6).**

Prior to determining whether Powell's role in the breach of BOI's contract was willful and malicious, the Court must determine whether the general injury suffered by BOI is cognizable under § 523(a)(6).  *See Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1206–09 (9th Cir. 2001) (determining first whether the injury was of the type that § 523(a)(6) is meant to except from discharge, and then analyzing whether the debtor's conduct was willful and malicious).  In general, chapter 7 debtors such as Powell are entitled to discharge unsecured debts.[17]  §§ 727(a), (b); *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008).  The Bankruptcy Code, however, provides certain exceptions to that general rule, including that "[a] discharge under section 727 . . . does not discharge an individual debtor

_____

[17]  BOI filed a proof of claim in Powell's bankruptcy case, indicating that $235,000 of its $398,242.73 claim against Powell was secured by "Equipment and receivables of Now Disc, Inc."  Bankr. No. 11-41147, Proof of Claim 7-1.  BOI also asserts a $163,242.73 unsecured claim against Powell.  *Id*.

MEMORANDUM OF DECISION - 13

from any debt— . . . for willful and malicious injury by the debtor[18] to

another entity or to the property of another entity." § 523(a)(6).

Even so, there are limitations, beyond willfulness and maliciousness,

on the type of injury that can be redressed via an exception to discharge

pursuant to § 523(a)(6). For example, where an injury results from a breach

of contract, it is not excepted from discharge unless accompanied by willful

and malicious *tortious* conduct. *In re Jercich*, 238 F.3d at 1205 (quoting

*Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992)). Indeed, even if

a breach of contract is intentional, and a debtor intends to cause injury by

breaching the contract, the breach is not, by itself, "tortious conduct," and

---

[18] It is questionable in this case whether the injury to BOI was caused by the *debtor*, Powell, or by Now Disc, acting through its board of directors. In other words, the Court is skeptical whether Powell's actions as a corporate officer were sufficient to hold him personally responsible for an injury caused by Now Disc's breach of contract with BOI. *See Masuo v. Galan (In re Galan)*, 455 B.R. 214, (Bankr. D. Idaho) (citing cases and explaining that a creditor's debt cannot be excepted from discharge if the debtor is only liable through some vicarious liability principle); *but see also, e.g.*, *Atlantic Recording Corp. v. Chan (In re Chan)*, 325 B.R. 432, 448 (Bankr. N.D. Cal. 2005) (finding that, where a debtor held a controlling position in a corporation that inflicted harm, and could have, through exercise of his control, prevented the injury, the corporation's conduct should be ascribed to the debtor). Because the Court resolves the § 523(a)(6) issues on other grounds in this case, it need not determine whether Powell is liable for Now Disc's actions in breaching the BOI contract for § 523(a)(6) purposes.

MEMORANDUM OF DECISION - 14

is not excepted from discharge pursuant to § 523(a)(6).[19]  *Lockerby*, 535 F.3d at 1040–42.  Rather, to determine whether a debtor's conduct, including actions resulting in a breach of contract, rise to the level of "tortious conduct" for the purposes of § 523(a)(6), bankruptcy courts look to state law.  *Lockerby*, 535 F.3d at 1041.

BOI has not asserted that Powell committed any sort of tortious conduct.  In Idaho, a mere breach of contract is not a tort.  *Selkirk Seed Co. v. State Ins. Fund*, 22 P.3d 1028, 1031 (Idaho 2000); *Carroll v. United Steelworkers of Am.*, 692 P.2d 361, 363 (Idaho 1984).  "To found an action in tort, there must be a breach of duty apart from the *nonperformance* of a contract."  *Carroll*, 692 P.2d at 363 (quoting *Taylor v. Herbold*, 483 P.2d 664 (Idaho

---

[19]  The Ninth Circuit has found that distinguishing between "tortious conduct" on the one hand, and intent to injure through a breach of contract on the other, is consistent with fundamental policies of bankruptcy law and the Bankruptcy Code's statutory scheme.  *Lockerby*, 535 F.3d at 1042–43 (finding that "[e]xpanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to 'start afresh,'" and "[s]ince the Code expressly permits intentional breaches of contract (making no qualifications with respect to the motive of the breaching party), it would be inconsistent to interpret § 523(a)(6) to render nondischargeable debts stemming from intentional breaches substantially certain to cause injury").

MEMORANDUM OF DECISION - 15

1971)) (internal quotations omitted) (emphasis in original). The non-

breaching party's interest invaded by the debtor's actions must be beyond

one created by the two parties' agreement; it must be created and protected

by the law. *See id.* Because BOI has not alleged that Powell inflicted an

injury beyond breaching the norms established by BOI's loan documents,

and because Now Disc's breach of contract is not "tortious conduct," the

injury caused to BOI by Now Disc's breach is not one that may be excepted

from discharge in Powell's bankruptcy pursuant to § 523(a)(6).

**II.    Even if covered by § 523(a)(6), the breach of the BOI
contract was not willful and malicious.**

Even if BOI's injury falls within the ambit of § 523(a)(6), BOI did not

prove[20] that Powell's participation in Now Disc's breach of contract was

willful or malicious. For a debt to be excepted from discharge pursuant to

§ 523(a)(6), a creditor must separately show that: (1) the debtor's conduct

in inflicting the injury was willful; and (2) the debtor's actions inflicting the

---

[20] The burden of proving that a debt should be excepted from discharge
pursuant to § 523(a)(6) rests on the creditor and must be proved by a
preponderance of the evidence. *See Molina v. Seror* (*In re Molina*), 228 B.R. 248,
251 (9th Cir. BAP 1998) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)).

MEMORANDUM OF DECISION - 16

injury were malicious. *Barboza v. New Form, Inc.* (*In re Barboza*), 545 F.3d

702, 706 (9th Cir. 2008).

To satisfy the willfulness element, a debtor's infliction of an injury

must have been deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57,

61 (1998). In the Ninth Circuit, the § 523(a)(6) standard for determining

whether infliction of an injury was intentional is a subjective one, and

requires a creditor to prove that the debtor either desired to cause a

particular injury, or that the debtor had actual knowledge that harm to the

creditor was substantially certain to result from his actions. *Carrillo v. Su*

(*In re Su*), 290 F.3d 1140, 1142–46 (9th Cir. 2002). Proving recklessness or

negligence is not enough. *Kawaauhau*, 523 U.S. at 61, 64.

For the § 523(a)(6) maliciousness element, a creditor  must prove

that the debtor caused an injury involving (1) a wrongful act, (2) done

intentionally, (3) which necessarily causes injury, and (4) that is done

without just cause or excuse. *Masuo v. Galan (In re Galan)*, 455 B.R. 214, 225

(Bankr. D. Idaho 2011) (citing *In re Su*, 290 F.3d at 1146–47).

Here, it is clear that Now Disc, with Powell's knowledge and

MEMORANDUM OF DECISION - 17

authorization, breached its contract with BOI by granting TRE a competing

security interest in the Collateral, and by authorizing TRE to broker the

sale of some of the Collateral, without obtaining the consent of BOI to do

so.  In authorizing the relationship with TRE, however, Now Disc and

Powell determined to retain sufficient accounts receivables to cover BOI's

outstanding loan balances.

The Court certainly questions the wisdom of this decision, and the

manner in which accounts were selected for assignment by Now Disc.  It

seems doubtful that the accounts retained by Now Disc and not sent to

TRE for auction were of a sufficient quantity and quality to provide BOI an

adequate reserve in case of a default on the BOI loans.[21]  However, the

Court nonetheless believes Powell's testimony that he and other board

members thought BOI's interests were protected in spite of the breach of

contract.  Because it appears that Powell did not think BOI would be

injured when Now Disc engaged in the TRE transactions, BOI has not

---

[21] Especially considering that the retained accounts were admittedly those
that were the least likely to be collectable.

MEMORANDUM OF DECISION - 18

satisfied its burden of proving that Powell intended to injure BOI.  BOI has

not proven that Powell's conduct was willful.

Moreover, there was no credible evidence presented that Powell or

Now Disc attempted to conceal its dealings with TRE from BOI in

connection with negotiating the Term Loan.  Indeed, based upon the

information included in the UCC search performed by BOI at the time, the

Court finds that BOI was necessarily aware of the fact that Now Disc was

dealing accounts receivable to TRE at the time the Term Loan deal was

documented.  This fact is also substantial evidence that Powell and Now

Disc did not willfully intend to injure BOI in the dealings with TRE.

In addition, BOI did not prove that Powell's conduct "necessarily

cause[d BOI] injury."  Since Now Disc's default on the Term Loan, BOI has

attempted to collect on the accounts receivable retained by Now Disc.  As

of yet, BOI has been unable to collect an amount sufficient to make more

than a small dent in retiring its outstanding loan balances, and the Court

believes future prospects for collection are dim.  At the same time, BOI

received other Collateral from Now Disc, including inventory that has not

MEMORANDUM OF DECISION - 19

been liquidated and applied to the loan balance.  At this point, the extent

of BOI's injury is, at best, unclear to the Court.[22]  While Now Disc breached

its contract with BOI, it is not yet certain that the breach of contract

necessarily caused injury to BOI, or was malicious.

### *Conclusion*

In sum, Now Disc, acting through Powell and others, breached its

contracts with BOI.  However, by definition, bankruptcy relief is designed

to ease the burden on those honest debtors who are unable to honor all of

their financial promises.  By designing exceptions narrowly, only limited

types of debts are to be nondischargeable.

In this case, the Court concludes that Powell's conduct did not cause

the type of injury that would prevent his debt to BOI from being

discharged through his bankruptcy pursuant to § 523(a)(6).  Even if his

participation in authorizing Now Disc's breach of contract was cognizable

---

[22]  While BOI, as evidenced by its filing of a partly unsecured claim in
Powell's bankruptcy case, obviously believes it was injured beyond what will be
covered by Now Disc's Collateral, BOI did not provide evidence of the extent of
that injury to the Court.  Until a good faith effort to liquidate Now Disc's
inventory has been made, the extent of BOI's injury will remain unclear.

MEMORANDUM OF DECISION - 20

under § 523(a)(6), however, BOI did not prove that Powell's conduct was

willful and malicious.  Powell's unsecured debt liability to BOI, whatever

that turns out to be once the BOI Collateral is liquidated, is dischargeable.

A separate judgment will be entered.

Dated:  June 22, 2012

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 21